**KEEFE, Appellant,**

**v.**

**YOUNGSTOWN DIOCESE OF THE CATHOLIC CHURCH et al., Appellees.**

[Cite as *Keefe v. Youngstown Diocese of the Catholic Church* (1997), 121 Ohio App.3d 1.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 1996CA00265.

Decided April 28, 1997.

**2**

*Sharon V. Fladen* and *Gerald P. Leb,* for appellant.

*Newman, Olson & Kerr* and *Mary Beth Houser;  Lesh, Casner & Miller* and *John R. Frank,* for appellees.

---

WILLIAM B. HOFFMAN, Judge.

Plaintiff-appellant Josephine Keefe appeals the judgment entry of the Court of Common Pleas of Stark County, awarding summary judgment in favor of defendants-appellees Youngstown Diocese of the Catholic Church and Judith Bogdan.

## STATEMENT OF THE FACTS

Appellant Josephine Keefe served as Secretary of the St. Joan of Arc Parochial School in Canton, Ohio, from October 1965 or 1966, to June 1971, and then from August 1977, until her employment was terminated on July 31, 1995.[1]  During her employment at St. Joan of Arc, appellant worked with four different school principals.  The last principal with whom appellant worked was appellee Judith Bogdan. At all times relevant to this action, the Pastor of St. Joan of Arc was Father John Lody.

On August 22, 1994, appellant met with Father Lody and informed him of her suspicions that Bogdan had been paying certain teachers from a special account

---

1.  Appellant voluntarily left her employment at St. Joan of Arc from 1971 to 1977 in order to bear and raise her son.

and had failed to take required tax deductions from the pay of said personnel in violation of federal law. Appellant then allegedly assisted Father Lody in making written notes regarding appellant's suspicions.

Bogdan subsequently admitted that she had failed to withhold the appropriate tax deductions from the paychecks of certain school employees. The parish bookkeeper was assigned to correct the problem. As a result of and subsequent to appellant's conversation with Father Lody, St. Joan of Arc issued amended tax forms to the effected personnel in order to correct the failure to withhold deductions.

Appellant maintains that, after reporting her suspicions regarding Bogdan to Father Lody, "Ms. Bogdan began treating me miserably." Specifically, appellant claims that, throughout the 1994–1995 school year, Bogdan refused to speak to her; denied her access to school files; failed to inform her about her (Bogdan's) whereabouts during school hours; and took away many of her job responsibilities. Appellant further claims that, as a result of Bogdan's actions, she suffered from high blood pressure, depression and anxiety, necessitating a leave of absence and psychiatric treatment.

On July 31, 1995, appellant's employment at St. Joan of Arc was terminated via certified letter from counsel for appellees. In this letter, appellees stated that appellant's employment was being terminated because of "(1) repeated insubordination to your supervisor, Principal Judy Bogdan; and (2) interference with the mission and objectives of St. Joan of Arc School, through your refusal to cooperate and perform your standard secretarial services." Specifically, appellees cited as examples of appellant's alleged insubordination and lack of cooperation her alleged interference with Bogdan's Parent Volunteer Program, her alleged interference with the administrative operation of the school office, her alleged aloofness to her supervisor's concerns, her allegedly readily noticeable hostile attitude, her allegedly false accusations that appellee Bogdan had "stolen" her vacation pay, and her alleged assumption of the principal's role. In addition, the letter noted that Father Lody and Bogdan had communicated their concerns to appellant from the summer of 1991 until the present without any improvement in her behavior.

## STATEMENT OF THE CASE

On August 7, 1995, appellant filed a complaint in the Court of Common Pleas of Stark County, seeking damages for intentional infliction of emotional distress and alleged violations of the common-law implied covenant of good faith and fair dealing, Ohio's Whistleblower's Act, Ohio public policy, and the Fair Labor Standards Act.

On March 13, 1996, appellant filed a motion for partial summary judgment, asking the court to find as a matter of law that an implied covenant of good faith and fair dealing existed between appellant and St. Joan of Arc. The trial court overruled appellant's motion via judgment entry dated April 30, 1996.

On May 24, 1996, appellees filed a joint motion for summary judgment on all counts contained in appellant's complaint. Via judgment entry dated August 21, 1996, the trial court granted appellees' motion in it's entirety.

It is from this entry that appellant now appeals, raising the following five assignments of error:

"I. The trial court erred as a matter of law in holding that appellant failed to strictly comply with the dictates of Ohio Revised Code Section 4113.52 (Judgment entry dated August 21, 1996, p. 3).

"II. The trial court erred as a matter of law in not holding that appellees violated Ohio Revised Code Section 4113.52(B). (Judgment entry dated August 21, 1996).

"III. The trial court erred as a matter of law in holding that appellant had not established that appellant's discharge was in violation of Ohio public policy. (Judgment entry dated August 21, 1996, p. 3, 4).

"IV. The trial court erred as a matter of law in holding that reasonable minds could not differ whether defendants' conduct constituted intentional infliction of emotional distress under the doctrine of *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369 [6 OBR 421, 453 N.E.2d 666] (Judgment entry dated August 21, 1996, p. 5 through 6).

"V. The trial court erred in granting, on all counts, appellees' motion for summary judgment. (Judgment entry dated August 21, 1996)."

## I

In her first assignment of error, appellant argues that the trial court erred in granting summary judgment in appellees' favor on her claim her discharge violated Ohio's Whistleblower Act, R.C. 4113.52.

Civ.R. 56(C) states, in pertinent part:

"Summary Judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion

and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

Pursuant to the above rule, a trial court may not enter a summary judgment if it appears that a material fact is genuinely disputed. In order to survive a motion for summary judgment, the nonmoving party must produce evidence on any issue to which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, citing *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265. Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 30 OBR 78, 78–79, 506 N.E.2d 212, 214–215.

R.C. 4113.52, Ohio's "Whistleblower Act," establishes guidelines by which an employee can bring to the attention of the employer or appropriate authorities illegal activity by either the employer or a co-employee without being discharged. See *Bear v. Geetronics, Inc.* (1992), 83 Ohio App.3d 163, 165, 614 N.E.2d 803, 804–805. Relevant to the instant case is R.C. 4113.52(A)(1)(a), which provides, in pertinent part:

"(A)(1)(a) If an employee becomes aware in the course of his employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that his employer has authority to correct, and the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony, *the employee orally shall notify his supervisor or other responsible officer of his employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation.*" (Emphasis added.)

R.C. 4113.52(B) further mandates that no employer take "any disciplinary or retaliatory action against an employee for making any report" authorized by R.C. 4113.52(A)(1).

Interpreting the above provisions, the Ohio Supreme Court has held that in order for an employee to be afforded protection as a "whistleblower," such employee must strictly comply with the dictates of R.C. 4113.52 and that the failure to do so prevents the employee from claiming the protections embodied in the statute. *Contreras v. Ferro Corp.* (1995), 73 Ohio St.3d 244, 652 N.E.2d 940, syllabus.

In the instant case, the trial court found that, although appellant orally notified appellees of appellee Bogdan's alleged violations of federal tax law, she did not

subsequently file a written report with Father Lody as required by R.C. 4113.52(A)(1)(a). Because the court found appellant was not in strict compliance with the dictates of said statute, the court found her claim must fail and awarded summary judgment in appellees' favor on this issue.

We agree with appellant that the trial court erred as a matter of law in awarding summary judgment to appellees on the issue of whether appellant's discharge violated Ohio's Whistleblower Act. The parties do not dispute that appellant orally notified Father Lody of appellee Bogdan's failure to withhold Social Security taxes from various school personnel. Further, it is clear that the failure to withhold said taxes constitutes a felony pursuant to Section 7202, Title 26, U.S.Code.[2]

The critical issue, then, is whether reasonable minds could conclude that appellant subsequently filed a written report with her supervisor that provided sufficient detail to identify and describe the violation. The record reflects that appellant, through her attorney, sent a letter dated September 23, 1994, to Dr. Nicholas Wolsonvich of the Diocese of Youngstown. This letter states, in pertinent part:

"Please be advised that this office represents Josephine Keefe who is a secretary at the school at St. Joan of Arc's parish. Please be advised that in the past few months she has had extreme problems with the principal, Judy Bogdan, concerning the handling of particular accounts at the school. *Those two accounts deal with preschool and milk funds. According to Ms. Keefe, it appears Ms. Bogdan has been paying teachers and employees from these funds. She has not paid applicable social security withholding to the Social Security Administration.*

"My client brought this to the attention of Father Lody on August 22, 1994, and he agreed that there were problems with the use of these accounts to pay teachers and employees. According to information we have received through Ms. Keefe, it appears that these two accounts cannot be used for the payment of any monies to any employees or teachers." (Emphasis added.)

We believe reasonable minds could conclude that the above letter qualifies as a written report containing sufficient detail to identify and describe the violations asserted by appellant. Said letter was written directly to appellee Diocese and

---

2. Section 7202, Title 26, U.S.Code provides:

"Any person required under this title to collect, account·for, and pay over any tax imposed by this title who willfully fails to collect or truthfully account for and pay over such tax shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution."

specifically sets forth appellant's allegations that appellee Bogdan had paid teachers and employees from the preschool and milk funds without making the applicable Social Security withholdings.

We find this decision to be consistent with *Rheinecker v. Forest Laboratories, Inc.* (S.D.Ohio 1993), 813 F.Supp. 1307. In that case, the defendant-employer moved for summary judgment on the grounds that the plaintiff-employee had failed to comply with R.C. 4113.52's written notification requirement. The United States District Court for the Southern District of Ohio disagreed and denied the employer's motion, holding that the question of whether a four-page facsimile sent by the employee to the employer satisfied R.C. 4113.52's notification was a material question of fact and not appropriate for summary judgment. We believe that *Rheinecker* is analogous to the instant case and supports our finding on this issue.

In light of the above, we find that the trial court erred in finding that appellant failed to strictly comply with R.C. 4113.52 as a matter of law and granting summary judgment in appellees' favor on this issue.

Appellant's first assignment of error is sustained.

## II

In her second assignment of error, appellant argues that the trial court erred in not holding that appellees violated R.C. 4113.52(B).

The record reflects that appellant did not move for summary judgment on this issue. Further, even if she had so moved and the court had ruled against her on this issue, the denial of a motion for summary judgment does not determine the action and prevent a judgment. Thus, such a denial is not a final order pursuant to R.C. 2505.02. *Celebrezze v. Netzley* (1990), 51 Ohio St.3d 89, 90, 554 N.E.2d 1292, 1293–1294.

Accordingly, appellant's second assignment of error is overruled.

## III

Appellant next argues that the trial court erred in awarding summary judgment in appellees' favor on her claim that her discharge violated Ohio public policy.

The Ohio Supreme Court recently addressed this issue in *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 677 N.E.2d 308. Therein, the court held:

"An at-will employee who is discharged or disciplined in violation of the public policy embodied in R.C. 4113.52 may maintain a common-law cause of action against the employer pursuant to *Greeley v. Miami Valley Maintenance Contrs.,*

8

*Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, and its progeny, so long as that employee had fully complied with the statute and was subsequently discharged or disciplined. (*Greeley, supra,* approved; *Painter v. Graley* [1994], 70 Ohio St.3d 377, 639 N.E.2d 51, paragraphs two and three of the syllabus, approved; *Phung v. Waste Mgt., Inc.* [1986], 23 Ohio St.3d 100, 23 OBR 260, 491 N.E.2d 1114, overruled.)" *Id.* at paragraph three of the syllabus.

If the fact finder, at the trial level, determines that appellant fully complied with the mandates of R.C. 4113.52, specifically, that the letter sent by appellant's attorney complies with the statute's requirement of written notice to the employer, then appellant's public-policy claim survives. Having found in our disposition of appellant's first assignment of error that the trial court erred in granting summary judgment in appellees' favor on the issue of whether appellant fully complied with R.C. 4113.52, we further find, pursuant to *Kulch, supra,* that the trial court erred in granting summary judgment in appellees' favor on appellant's public-policy claim.

Accordingly, appellant's third assignment of error is sustained.

## IV

■ In her fourth assignment of error, appellant argues that the trial court erred in awarding summary judgment in appellees' favor on her claim of intentional infliction of emotional distress.

In *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666, the Ohio Supreme Court held that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress." *Id.* at syllabus paragraph one. With respect to the requirement that the alleged conduct be extreme and outrageous, the court explained:

"It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 374–375, 6 OBR at 426, 453 N.E.2d at 671.

In the instant case, appellant claims that she suffered severe emotional distress as a result of appellee Bogdan's alleged continuing pattern of harassment throughout the 1994–1995 school year, discussed in detail in the Statement of the Facts, *supra.* She further claims that, as a result of appellee Bogdan's conduct,

she has suffered from high blood pressure, depression and anxiety, necessitating a leave of absence and psychiatric treatment.

Upon review of the record, we believe reasonable minds could only conclude the conduct attributed to the appellees was not so severe as to constitute "extreme and outrageous conduct," as that phrase is defined in *Yeager, supra.* Consequently, we believe that the trial court did not err in granting summary judgment in appellees' favor on appellant's claim for intentional infliction of emotional distress.

Appellant's fourth assignment of error is overruled.

## V

In her fifth and final assignment of error, appellant claims that the trial court erred in granting appellees' motion for summary judgment.

We find this assignment of error to be cumulative to appellant's first through fourth assignments of error. In light of our resolution of these assignments of error, we find appellant's fifth assignment of error to be moot.

For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County is affirmed in part, reversed in part and remanded for further proceedings in accordance with law and this opinion.

*Judgment accordingly.*

READER, P.J., and JOHN W. WISE, J., concur.