OPINION
{¶ 1} Plaintiff-appellant, Barry J. Shaffer, Sr. ("Shaffer"), was the president and chief operating officer of defendant-appellee, OhioHealth Group, Ltd. ("OHG"), a limited liability company owned in equal shares by defendants-appellees, OhioHealth Corporation ("OHC") and The Medical Group of Ohio, Ltd. ("MGO"). During the course of his employment, Shaffer became concerned that certain proposed contracts involving OHG might violate federal antitrust laws. He discussed his concerns with members of the Executive Committee of the Board of Managers for OHG ("Executive Committee"), both individually and collectively, and sought legal advice from company counsel for OHG. On June 10, 2002, counsel for OHG wrote to Shaffer, opining that the proposed contracts would violate federal antitrust law. At Shaffer's request, counsel for OHG supplied a copy of the opinion letter to the Executive Committee. On July 2, 2002, OHG eliminated Shaffer's position and terminated his employment. On September 27, 2002, Shaffer filed an action against OHG, OHC and MGO, alleging he was wrongfully discharged from his employment in violation of R.C. 4113.52, Ohio's Whistleblower Act, and Ohio public policy.
 {¶ 2} On November 27, 2002, OHG and OHC filed a motion to strike any reference to attorney-client privileged information contained in Shaffer's complaint, including any reference to the June 10, 2002 opinion letter. OHG and OHC also moved for a protective order preventing Shaffer from divulging or seeking discovery of privileged information. The trial court denied the motion to strike and motion for protective order on January 9, 1993, finding that Shaffer, rather than OHG and OHC, owned the attorney-client privilege with respect to communications with, and documents produced by, company counsel. OHG and OHC timely appealed from that determination.
 {¶ 3} While the appeal of the privilege issue was pending, MGO, on July 1, 2003, filed a motion for summary judgment seeking dismissal of Shaffer's claims against MGO on two grounds: (1) MGO's status as a member of OHG, a limited liability company, sheltered it from liability for OHG's actions; and (2) MGO was not Shaffer's employer for purposes of R.C. 4113.52 and the common law tort of wrongful discharge in violation of public policy. Shaffer opposed the motion, asserting that MGO was liable as an agent of Shaffer's employer, OHG, and took action to effect his termination from OHG.
 {¶ 4} On October 3, 2003, the trial court granted summary judgment for MGO on both of plaintiff's claims. In particular, the court found that MGO could not be liable for OHG's alleged wrongdoing based solely on its role as a member of a limited liability company and that Shaffer had failed to produce any evidence to substantiate his claims that MGO was an agent of OHG or that MGO was otherwise Shaffer's employer. The trial court journalized its decision in an entry filed October 15, 2003, without the language provided for in Civ.R. 54(B).
 {¶ 5} On October 16, 2003, OHG and OHC filed a motion for summary judgment seeking dismissal of Shaffer's claims on three bases: (1) Shaffer alleged possible future violations as opposed to past violations as required by R.C. 4113.52(A)(1); (2) Shaffer did not provide the written notice required by R.C.4113.52(A)(1); and (3) Shaffer failed to establish a causal connection between the reporting of the violations and the termination of his employment because the decision to terminate Shaffer was made prior to the filing of the June 10, 2002 report. OHG and OHC moved for summary judgment on the public policy claim on grounds that the statutory claim failed. OHC also argued that summary judgment was proper because it was not Shaffer's employer for purposes of R.C. 4113.52. Shaffer opposed the motion, asserting that the June 10, 2002 opinion letter satisfied the written notification requirement of R.C. 4113.52. He further argued he had presented sufficient evidence to establish a genuine issue of material fact regarding both the time frame of the alleged violations and OHC's status as Shaffer's employer.
 {¶ 6} On January 8, 2004, this court rendered an opinion on the privilege issue, holding that the attorney-client privilege belonged to OHG and that Shaffer, as a former executive, had no right to waive the privilege on behalf of OHG. Shaffer v.OhioHealth Corp., Franklin App. No. 03AP-102, 2004-Ohio-63. This court refused to consider three additional arguments asserted by Shaffer on appeal because the arguments had not been raised before the trial court and were not considered by the trial court in addressing the motion to strike and motion for a protective order. Id. at ¶ 13. Accordingly, this court reversed the trial court's decision, "without prejudice to further determinations granting or denying comparable motions by either party on such other grounds as the evolution of the case may cause to be considered." Id. at ¶ 15.
 {¶ 7} By decision filed January 12, 2004, the trial court granted summary judgment for OHG and OHC. The court found that OHC could not be liable for OHG's alleged wrongdoing based solely on its role as a member of a limited liability company and that Shaffer had failed to produce sufficient evidence to substantiate his claims that OHC was an agent of OHG or that OHC was otherwise Shaffer's employer. The court found sufficient evidence to establish a genuine issue of material fact as to the timeframe of the alleged violations; however, the court further found that Shaffer failed to comply with the written reporting requirements set forth in R.C. 4113.52(A)(1). Having so found, the court determined OHG and OHC were entitled to judgment as a matter of law on both the statutory and public policy claims.
 {¶ 8} Based upon this court's January 8, 2004 opinion, the trial court, on March 3, 2004, granted the motion to strike and motion for protective order and struck all references to attorney-client privileged information contained in Shaffer's complaint.
 {¶ 9} On March 3, 2004, Shaffer filed a notice of appeal "from the Court's February 3, 2004 Final Entry Granting Defendants Ohiohealth Group, LLC and Ohiohealth Corporation's Motion for Summary Judgment filed October 16, 2003." Shaffer sets forth two assignments of error, as follows:
I. The trial court erred as a matter of law in granting appellees' motions for summary judgment.
II. The trial court abused its discretion in granting defendants ohiohealth group, LLC and ohiohealth corporation's November 27, 2002 motion to strike from plaintiff's complaint any attorney-client privileged information and for protective order.
 {¶ 10} By his first assignment of error, Shaffer contends the trial court erred in granting summary judgment to all three defendants. This court reviews a summary judgment disposition independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. In conducting our review, this court applies the same standard as that employed by the trial court.Maust v. Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103,107. Summary judgment should be rendered only where the evidence demonstrates that: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence in a light most favorable to the nonmoving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); State ex rel. Grady v. State Emp.Relations Bd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 11} As an initial matter, we must consider MGO's contention that Shaffer failed to comply with App.R. 3(D) by failing to state in his notice of appeal that he is appealing from the October 15, 2003 order granting summary judgment to MGO. Because Shaffer's first assignment of error is predicated, in part, on the October 15, 2003 order, but his notice of appeal designates only the trial court's February 3, 2004 final judgment as the order appealed, MGO contends Shaffer's appeal, as it relates to MGO, should be dismissed.
 {¶ 12} App.R. 3(D) provides a notice of appeal "shall designate the judgment, order or part thereof appealed from." Interlocutory orders, however, are merged into the final judgment; thus, an appeal from the final judgment includes all interlocutory orders merged with it. Kvinta v. Kvinta, Franklin App. No. 02AP-836, 2003-Ohio-2884, at ¶ 20, citing Bard v.Society Natl. Bank (Sept. 10, 1998), Franklin App. No. 97APE11-1497. The October 15, 2003 order did not dispose of all the claims between the parties and did not contain an express determination that there was no just reason for delay; thus, it was interlocutory. Civ.R. 54(B); Id. Accordingly, it merged into the February 3, 2004 final judgment and did not need to be separately identified in the notice of appeal. Accordingly, Shaffer's appeal of the trial court's grant of summary judgment to MGO is properly before us.
 {¶ 13} R.C. 4113.52(A)(1)(a) addresses the circumstances raised in the instant case, i.e., an employee, who in the course of his or her employment, becomes aware of a violation of any state or federal statute that the employer has authority to correct, which the employee reasonably believes that the violation is a felony and who reports it, is entitled to protection. Under such circumstances, R.C. 4113.52(A)(1)(a) requires the employee to orally notify his or her supervisor or other responsible officer of the employer of the violation and subsequently file with that person a written report that provides sufficient detail to identify and describe the violation. R.C.4113.52(B) makes it unlawful to discharge or discipline an employee who avails himself or herself of the protections of the statute. "An at-will employee who is discharged or disciplined in violation of R.C. 4113.52 may maintain a statutory cause of action for the violation, a common-law cause of action in tort [for wrongful discharge in violation of public policy], or both, but is not entitled to double recovery." Kulch v. StructuralFibers, Inc. (1997), 78 Ohio St.3d 134, paragraph five of the syllabus.
 {¶ 14} For an employee to be afforded protection as a "whistleblower," the employee must strictly comply with the requirements of R.C. 4113.52. An employee's failure to do so bars him or her from claiming the protections of the statute.Contreras v. Ferro Corp. (1995), 73 Ohio St.3d 244, syllabus; see, also, Kulch, at paragraph two of the syllabus.
 {¶ 15} In granting summary judgment in favor of OHG and OHC, the trial court rejected Shaffer's contention that the June 10, 2002 letter from OHG company counsel to him, which was provided at his request to the Executive Committee, satisfied the written notification requirement of R.C. 4113.52(A)(1)(a). In so finding, the trial court observed that the statute expressly states that the employee must file a written report with the employer and does not state that someone acting on behalf of the employee or at the employee's request may provide the written notification. As such, the court strictly construed the statute to require, in the absence of any authority to the contrary, that the employee must file the written report with the employer.
 {¶ 16} Having so found, the court noted that Shaffer testified by deposition that he never personally filed a written report with OHG. The court further noted there was no evidence establishing whether Shaffer's request for counsel's legal opinion was made orally or by written communication. Although the court suggested that a letter from Shaffer to counsel outlining his concerns, coupled with a letter from corporate counsel to OHG either referencing or attaching Shaffer's letter, might constitute sufficient evidence to create a genuine issue of material fact, the court ultimately concluded that, without evidence of a writing by Shaffer either directly to OHG or to corporate counsel, OHG and OHC were entitled to judgment as a matter of law on the issue of written notification.
 {¶ 17} On appeal, Shaffer relies upon Keefe v. YoungstownDiocese of the Catholic Church (1997), 121 Ohio App.3d 1. In that case, Josephine Keefe was employed as a secretary at a parochial school. In August 1994, Keefe orally informed the pastor of the church of her suspicions that the principal had been paying certain school personnel from a special account and had failed to withhold applicable tax deductions from their pay in violation of federal law. In September 1994, Keefe, through her personal attorney, sent a letter to the Diocese setting forth her allegations of tax improprieties. The principal subsequently admitted she had failed to withhold the appropriate tax deductions. The school ultimately issued amended tax forms to the effected personnel.
 {¶ 18} Following these events, Keefe's relationship with the principal deteriorated and, in July 1995, she was discharged for insubordination. Keefe sued the Diocese, alleging, among other things, violations of R.C. 4113.52 and Ohio public policy. The trial court found that, although Keefe orally notified the Diocese of the alleged violations of federal tax law, she did not subsequently file a written report with the pastor as required by R.C. 4113.52(A)(1)(a). The trial court found Keefe was not in strict compliance with the statute and awarded summary judgment to the Diocese.
 {¶ 19} On appeal, the court framed the issue as "whether reasonable minds could conclude that [Keefe] subsequently filed a written report with her supervisor that provided sufficient detail to identify and describe the violation." Id. at 6. The court concluded that the September 1994 letter to the Diocese qualified as such a report. In so concluding, the court noted that the letter was written directly to the Diocese and specifically set forth Keefe's allegations that the principal had paid school personnel from special accounts without making the applicable tax deductions.
 {¶ 20} Shaffer contends Keefe supports his contention that the June 10, 2002 letter satisfies the written notice requirement of R.C. 4113.52(A)(1)(a). We disagree, as Keefe is factually distinguishable from the instant case. In Keefe, Keefe retained her own legal counsel separate and distinct from counsel for the employer. Keefe's personal attorney wrote directly to the employer on Keefe's behalf. In the instant case, counsel for the employer addressed the letter to Shaffer in his capacity as an executive of the company and then forwarded a copy of the letter to the employer. The letter was not written directly to the employer on Shaffer's behalf personally as was the case inKeefe.
 {¶ 21} Moreover, the Keefe court was not asked to decide the issue raised in the instant case. The issue to be determined, as framed by the court, was whether the language of the letter sent to the employer was sufficiently detailed to advise the employer of an alleged violation. The fact that the sufficiency of the notice was the disputed issue is apparent from the court's reliance upon Rheinecker v. Forest Laboratories, Inc. (S.D.Ohio 1993), 813 F.Supp. 1307. The Keefe court described the issue presented for review in Rheinecker as "whether a four-page facsimile sent by the employee to the employer satisfied R.C.4113.52's notification" requirement. Keefe, at 7. Indeed, theRheinecker court identified the issue before it as whether the employee's written facsimile supplied "sufficient detail to describe and identify * * * [a] violation as [R.C. 4113.52] requires." Rheinecker, at 1311. The Rheinecker court held that whether the language of the facsimile satisfied the requirement of R.C. 4113.52 was an issue of fact for the jury. Id. at 1311. The Keefe court stated that "[w]e believe thatRheinecker is analogous to the instant case and supports our finding on this issue." Keefe, at 7. In light of the fact thatRheinecker involved a report written by an employee and Keefe
involved a report written by an attorney on behalf of an employee, the only way the cases are analogous is on the issue of whether the language of the written report provided sufficient detail to identify an alleged violation. No such issue is raised here.
 {¶ 22} In Moshier v. Jeg's High Performance Centers, Inc.
(1994), 99 Ohio App.3d 236, 238, this court held that R.C.4113.52 "plainly requires an employee to file a written report in order to gain the benefits of the statute." The issue inMoshier was whether the employer could waive the written reporting requirement. Based on the plain language of the statute, which states that the "employee orally shall notify his supervisor * * * and subsequently shall file * * * a written report," this court held that "[p]laintiff's contentions invite us to rewrite the statute, and we decline." Id. at 238.
 {¶ 23} As in Moshier, Shaffer also invites this court to rewrite R.C. 4113.52, and we likewise decline. The plain and unambiguous language of R.C. 4113.52(A)(1)(a) requires the employee to file a written report with the employer. Nowhere in the statute does it indicate that the employee may forward to the employer a report written by a thirdparty and addressed to the employee in his business capacity.
 {¶ 24} Because we believe reasonable minds could not conclude the June 10, 2002 letter satisfies the written reporting requirement, we find Shaffer did not strictly comply with the dictates of R.C. 4113.52(A)(1)(a). Such fact is fatal to his claim for protection under the statute. Accordingly, we find the trial court did not err in granting summary judgment in favor of OHG and OHC on Shaffer's claim for statutory protection under R.C. 4113.52(A)(1).
 {¶ 25} For his public policy claim, Shaffer relies on the public policy against discharging employees who report violations of federal, state or local laws, the public policy against discharging employees who take action to ensure the accuracy of violations they report, and the public policy against retaliating against employees who seek investigation and prosecution of individuals who commit criminal or civil wrongdoings or violate company policy. In short, Shaffer claims he was discharged for reporting the antitrust violations and for taking action to ensure the accuracy of the information he reported, and that, in Ohio, there is public policy against discharging him for these actions. A clear expression of the public policies upon which Shaffer relies is evident in the scope of R.C. 4113.52.
 {¶ 26} In Kulch, the Ohio Supreme Court stated, at 153:
* * * [T]he public policy embodied in the Whistleblower Statute is limited. By imposing strict and detailed requirements on certain whistleblowers and restricting the statute's applicability to a narrow set of circumstances, the legislature clearly intended to encourage whistleblowing only to the extentthat the employee complies with the dictates of R.C. 4113.52.
* * *
(Emphasis sic.)
 {¶ 27} Consequently, Shaffer is limited to asserting his claim for tortious wrongful discharge in violation of public policy pursuant to the requirements of R.C. 4113.52. "The obvious implication of Contreras is that an employee who fails to strictly comply with the requirements of R.C. 4113.52 cannot base a [tort] claim solely upon the public policy embodied in that statute." Id. Having already determined that Shaffer did not strictly comply with the written notification requirements of R.C. 4113.52(A)(1), Shaffer has no foundation for a tort claim based on the public policy embodied in R.C. 4113.52(A)(1).
 {¶ 28} Turning to Shaffer's appeal of the trial court's judgment in favor of MGO, we need not address his contention that the trial court erred in granting summary judgment to MGO on grounds that MGO was not Shaffer's employer for purposes of R.C.4113.52. Even if this court determined that Shaffer set forth sufficient evidence to establish a genuine issue of material fact as to whether MGO was Shaffer's employer, we have already determined that Shaffer did not comply with the statute's written notification requirements. Regardless of MGO's status as an employer, the fact that Shaffer failed to strictly comply with the dictates of R.C. 4113.52(A)(1)(a) is fatal to his claim for protection under the statute. Accordingly, albeit for different reasons, we find the trial court did not err in granting summary judgment in favor of MGO on Shaffer's claim for statutory protection under R.C. 4113.52(A)(1).
 {¶ 29} Shaffer's second assignment of error challenges the trial court's March 3, 2004 decision granting the motion to strike and motion for protective order filed by OHG and OHC. OHG and OHC contend, in a motion to dismiss filed with this court, that this assignment of error is not properly before this court because Shaffer failed to designate in the notice of appeal that he is appealing from the trial court's March 3, 2004 decision.
 {¶ 30} A review of the record reveals that no appealable judgment entry has been journalized with regard to the trial court's decision; thus, this assignment of error must be dismissed for lack of a final appealable order. Further, had an appealable judgment entry been journalized, our resolution of the first assignment of error would render this assignment of error moot. For these reasons, the motion to dismiss filed by OHG and OHC is denied.
 {¶ 31} For the foregoing reasons, Shaffer's first assignment of error is overruled and the second assignment of error is dismissed for lack of a final appealable order. The judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Motion to dismiss denied, judgment affirmed.
Klatt and McCormac, JJ., concur.
McCormac, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.